UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LUCILLE MIRABELLO,            )
           Plaintiff    )
                       )
                       )
    v.           )   Civil Action No. 12-30082-KPN
                       )
                       )
ATRIUM MEDICAL CORPORATION,   )
           Defendant    )

MEMORANDUM AND ORDER REGARDING DEFENDANT'S
MOTION TO DISMISS (Document No. 14)
March 15, 2013

NEIMAN, U.S.M.J.

Presently before the court is Defendant Atrium Medical Corporation ("Atrium")'s motion to dismiss Lucille Mirabello ("Plaintiff")'s complaint for failure to state a claim upon which relief may be granted. Plaintiff, proceeding *pro se*, has opposed Atrium's motion. The parties have consented to this court's jurisdiction. *See* 28 U.S.C § 636(c); Fed. R. Civ. P. 73. For the reasons which follow, the court will deny Atrium's motion to dismiss.

I. STANDARD OF REVIEW

A complaint generally requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Still, Plaintiff must allege enough facts so that the claim is "plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007), *i.e.*, the factual content pled should "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In drawing such

an inference, a court need not credit "bald assertions, unsupportable conclusions, and opprobrious epithets." *Campagna v. Mass. Dep't of Envtl. Prot.*, 334 F.3d 150, 155 (1st Cir.2003) (quoting *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989)). "In short," the First Circuit has explained, "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir.2011).

When dealing with a *pro se* plaintiff, the court employs a somewhat more lenient standard. A document filed *pro se* is "to be liberally construed," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and a *pro se* complaint, "however inartfully pleaded," must be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Of course, the generous standard has limits; a *pro se* complaint can be dismissed for failure to state a claim if it appears that no showing of any set of facts consistent with the allegations in the complaint can be shown. *Bell Atl. Corp.*, 550 U.S. at 563.

II. FACTUAL BACKGROUND

The following factual allegations are derived from Plaintiff's complaint and are stated in a light most favorable to her.

On July 24, 2008, Plaintiff underwent surgery to repair a ventral hernia. During the surgery, Dr. John Romanelli inserted a hernia mesh called C-Qur made by Atrium. On August 1, 2008, Dr. Romanelli's associate informed Plaintiff's brother, who is Plaintiff's healthcare proxy, that she had an infection and needed to be operated on immediately to save her life. The operation was performed the same day. During the week between her first and second surgeries, July 24, 2008 to August 1, 2008, Plaintiff

was in such pain that morphine provided little to no relief, she had trouble breathing, and she had a fever of 102 degrees.

During the August 1, 2008 surgery, three sections of Plaintiff's small intestines were removed, which Plaintiff did not learn until sometime after May 2009.  Plaintiff came out of this second surgery on full life support and needed to be placed in isolation due to multiple infections.  Plaintiff later learned she had flat-lined six times during this second surgery.  On August 8, 2008, there was a third surgery, after which Plaintiff became so restless that she ripped open her incision;  there was not enough skin to close the wound so it was left open.  Plaintiff was placed in a medical coma until September 4, 2008.

On September 15, 2008, after eight weeks in the hospital, Plaintiff went to Weldon Rehabilitation Center where she spent three weeks learning to stand, walk, and use her hands again.  She then spent another six weeks at Linda Manor where she transitioned from a wheelchair to a walker.  While there, Plaintiff learned she suffered a bladder infection, which started at the end of July 2008, and a new hernia.  Plaintiff returned home on November 21, 2008.  On March 11, 2009, a final surgery was done to repair two new hernias created at the time of the second surgery on August 1, 2008, and to close the hole in Plaintiff's abdomen left open on August 8, 2008.

On either the 5th or the 9th of May, 2009, the date being unclear, Plaintiff asked Dr. Romanelli exactly what had happened to her.  Dr. Romanelli told her that the mesh he had inserted into her had a metal piece attached to it which had detached and sliced through her small intestines.  Plaintiff subsequently went on the internet to find more information about the mesh and believed that the piece of metal Dr. Romanelli

described was a tack. By June 2009, Plaintiff, with the help of her brother, realized the extent of her memory loss, believed to be about five years, 2003 to 2008; Plaintiff asserts that she continues to experience difficulty retaining information. In March 2010, Plaintiff visited another doctor who told her she had suffered brain damage due to the many times she had stopped breathing during her second surgery on August 1, 2008.

In any event, after Plaintiff's May 2009 visit with Dr. Romanelli and her subsequent research, Plaintiff consulted many lawyers to determine her rights and remedies under the law. All of the lawyers Plaintiff spoke with were either unwilling or unable to take her case. As indicated, Plaintiff has chosen to proceed *pro se*.

## III. DISCUSSION

Atrium's motion to dismiss is twofold. First, Atrium asserts that Plaintiff has failed to plead or articulate any facts to support any theory of liability. Second, Atrium asserts that Plaintiff's claims are barred by the applicable statute of limitations. The court deals with each assertion in turn.

A. Failure to State a Claim

Atrium argues first that Plaintiff's claim should be dismissed because she has failed to allege in her complaint that Atrium's C-Qur mesh is or was defective or to plead any facts that would support any such allegation. In essence, Atrium argues, Plaintiff makes no allegation that Atrium's C-Qur mesh is or was the cause of her injuries. The court disagrees.

Given the facts contained in Plaintiff's complaint and in light of the less stringent standard to which *pro se* pleadings are held, Plaintiff, in the court's view, has sufficiently stated her claim against Atrium. She alleges that during the first surgery on July 24,

2008, Dr. Romanelli inserted an Atrium hernia mesh called C-Qur. She further alleges that in a May 2009 appointment, Dr. Romanelli showed her Atrium's website and explained that what had gone wrong during the surgery was that a piece of metal detached from the hernia mesh and sliced through her small intestines. This could well have led Plaintiff to believe that the hernia mesh and a tack -- which she discovered in her research online -- came together and were both made by Atrium. Although she did not plead that the tack was actually manufactured or sold by Atrium, Plaintiff specifically pled that the tack sliced through her intestines. This can be further explored during discovery.

To be sure, in its memorandum in support of its motion to dismiss, Atrium proffers new information not contained in the pleadings. First, Atrium asserts that it does not make or sell tacks; second, Atrium cites its instructions for use and warnings for the C-Qur hernia mesh as found on its website. The court, however, will not consider this information for present purposes. A court addressing a motion to dismiss must either confine itself to the four corners of the complaint or, if it intends to consider matters outside the pleadings, convert the motion to one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d); *see also Dynamic Image Technologies, Inc. v. United States*, 221 F.3d 34, 37 (1st Cir.2000). Here, it is too early in the litigation for the court to become involved in what will clearly be a point of dispute. For the moment, Plaintiff's complaint provides "fair notice" to Atrium of her claims. *Ocasio-Hernandez*, 640 F.3d at 12.

B. Statute of Limitations

Atrium next argues that, even if Plaintiff has pled sufficient facts to state a claim, that claim is barred by the statute of limitations. The three-year limitations period for negligence claims commences "after the cause of action accrues." M.G.L. c. 260, § 2A. Normally, a cause of action for personal injury accrues at the time of injury. *Genereux v. American Berylia Corp.*, 577 F.3d 350, 359-360 (1st Cir. 2009). However, under Massachusetts' discovery rule, and this is a diversity case, "a cause of action does not accrue until the plaintiffs know or reasonably should have known that they were injured as a result of the defendant's conduct." *Cornell v. E.I. Du Pont de Nemours & Co.*, 841 F.2d 23, 24 (1st Cir.1988) (quoting *Olsen v. Bell Tel. Labs, Inc.*, 445 N.E.2d 609, 611 (Mass. 1983)). Actual knowledge is not the standard, but "what a reasonable person in [plaintiff's] position would have known or on inquiry would have discovered." *Genereux*, 577 F.3d at 360 (quoting *Bowen v. Eli Lilly & Co., Inc.,* 557 N.E.2d 739, 742 (Mass. 1990)).

The Massachusetts discovery rule has two parts: "a plaintiff [must] have (1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was." *Bowen*, 557 N.E.2d at 742. Such notice includes not only knowledge that one has been injured but also knowledge of the cause -- that plaintiff "has been harmed as a result of the defendant's conduct." *Fidler v. Eastman Kodak Co.*, 714 F.2d 192, 198 (1st Cir.1983) (quoting *Olsen*, 445 N.E.2d at 611)). The level of notice of cause sufficient to trigger the statute of limitations is "likely cause." *Id.* at 199; *see also Cornell*, 841 F.2d at 24 ("[T]he level of notice required to start the statute running has been defined as likely cause.") (internal quotation marks and citation omitted)). Whether in a given case there was notice of "likely cause"

depends on the facts, *Bowen*, 557 N.E.2d at 742, and in most instances will be decided by the trier of fact. *In re Mass. Diet Drug Litig.*, 338 F.Supp.2d 198, 204 (D. Mass. 2004) (quoting *Riley v. Presnell*, 565 N.E.2d 780, 783 (Mass. 1991)); *see also Koe v. Mercer*, 876 N.E.2d 831, 836 (Mass. 2007).

In support of its motion, Atrium emphasizes the "inquiry notice" of the standard, *i.e.*, when the first event occurs that would prompt a reasonable person in the plaintiff's position to inquire into a possible injury at the hands of the defendant. Once on inquiry notice, Atrium argues, a plaintiff is charged with the knowledge that she would have uncovered through a reasonably diligent investigation even if she does not have actual knowledge of that information. Here, Atrium asserts, based on the amount of information Plaintiff had and in light of her subsequent condition, her duty of inquiry was triggered and the statute of limitations began to run on August 1, 2008, the date of the second surgery, or, at the latest, on November 21, 2008, the date she returned home from her nine-week rehabilitation stay. For its part, the court is not convinced for present purposes that Plaintiff was on inquiry notice on either date.

As far as the August 1, 2008 date, Atrium argues that Plaintiff was aware that the first surgery had gone wrong and that her injuries were likely caused by another's conduct. Absent some warning sign, however, individuals ordinarily are not expected to assume that undesirable outcomes are the result of negligent or otherwise wrongful acts or omissions attributable to others, be it their accountants, attorneys, or physicians. *RTR Technologies, Inc. et al. v. Carlton Helming et al.*, 707 F.3d 84, 90, 2013 WL 388766 (1st Cir. February 1, 2013). Thus, the question here is when Plaintiff knew or reasonably should have known that her injury was "likely caused" by Atrium so as to

trigger the statute of limitations. *See Genereux*, 577 F.3d at 361 (a reasonable jury could find that the plaintiff lacked notice that her symptoms were "likely caused" not by asthma, but by another disease); *Bowen*, 557 N.E.2d at 743 (plaintiff possessed information, including published medical articles and letters from doctors, suggesting a significant "causal connection" between the drug DES and her "exceedingly rare" condition thus triggering the statute of limitations).

In the court's view, Plaintiff did not discover the "likely cause" of her injury until May of 2009 and her failure to do so earlier was reasonable. In essence, the underlying facts of Plaintiff's claim, *i.e.*, what had happened inside her body, were "inherently unknowable." *RTR Technologies, Inc.*, 707 F.3d at 90 (discovery rule pertains only to those plaintiffs who suffer injuries under circumstances in which the facts, as distinguished from the legal theory, are "inherently unknowable" to the injured party). There is no evidence Plaintiff had any knowledge that the injuries she suffered during and after her first surgery were caused by anyone, Atrium included, nor could she reasonably have had any knowledge until May of 2009 when she asked Dr. Romanelli what had happened. There is no evidence proffered that she could have or should have inquired earlier. It was only then, during an appointment with him, that Dr. Romanelli showed Plaintiff Atrium's website and explained what he believed to have gone wrong with the hernia mesh. This, then, provided the possible if not likely causal link. *See Riley*, 565 N.E.2d at 786 (reversing summary judgment and holding that a reasonable fact finder could find that the plaintiff patient did not make the causal link between the

damaging therapy he received from the defendant psychiatrist and the psychological harm he suffered and that his failure to do so was reasonable).[1]

Accordingly, the date of Plaintiff's appointment with Dr. Romanelli, either the 5th or 9th of May 2009, is the date she knew or reasonably should have known that Atrium may have caused her injuries, thus triggering the statute of limitations. As a result, Plaintiff's May 3, 2012 filing is timely, albeit barely.

## IV. CONCLUSION

For the reasons stated, Atrium's motion to dismiss is DENIED. The clerk's office shall set a scheduling conference.

IT IS SO ORDERED.

DATED: March 15, 2013

                                                /s/ Kenneth P. Neiman
                                                KENNETH P. NEIMAN
                                                U.S. Magistrate Judge

---

[1] The court notes that Plaintiff's physical ailments arising from the July 24, 2008 surgery may well have created ongoing obstacles to her reasonable discovery of their cause. While there is little guidance in the First Circuit as to whether physical ailments arising from the alleged negligence should affect the accrual of a claim, the Supreme Judicial Court in *Riley* did emphasize that the reasonable person who serves as the standard in the two-part *Bowen* test is "a reasonable person *in the position of the plaintiff*." *Riley*, 565 N.E.2d at 789 (emphasis added); *see Pardy v. United States,* 575 F.Supp. 1078, 1079-80 (S.D. Ill. 1983) (plaintiff's comatose state for fifteen days as a result of the alleged medical malpractice tolled the federal statute of limitations until the date he woke up as he could not appreciate his injury or its cause until at least that date). Here, Plaintiff spent eight weeks in the hospital, during which time she was comatose, on full life support, or in isolation due to infection, underwent three additional surgeries, had three sections of her small intestines removed, flat-lined six times causing significant memory loss and retention difficulties, and spent months in rehabilitation centers to recapture lost skills, including standing, walking, and eating.